# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFERY RAY WHEELER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-09-483-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Jeffery Ray Wheeler requests review of the Commissioner of the Social Security Administration's denial of benefits pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on January 24, 1985, and was twenty-four years old at the time of the administrative hearing (Tr. 26, 169). He has a ninth grade education (Tr. 27), and has worked as a cashier/checker, restaurant manager, janitor, and golf caddy (Tr. 41). The claimant alleges inability to work since October 1, 2004 due to vertigo, ringing in the ears, blurred vision, and shaky hands (Tr. 131).

## Procedural History

The claimant applied on October 16, 2006 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, which applications were denied. ALJ Osly F. Deramus held an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 13, 2009. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that claimant retained the residual functional capacity (RFC) to perform the full range of work at all exertional levels, but was limited to understanding and carrying out only simple (and some more complex) instructions under routine supervision, and having no contact

with the general public (Tr. 14). The ALJ concluded that the claimant was not disabled because he could return to his past work as a janitor (Tr. 20).

## Review

The claimant contends the ALJ erred: (i) by failing to properly evaluate a medical opinion from his treating physician Dr. Herman Jones, Ph.D.; (ii) by failing to properly evaluate his credibility; and, (iii) by failing to properly analyze his RFC and ability to return to past relevant work at step four. The Court finds that the ALJ *did* fail to properly evaluate Dr. Jones's opinion, and the decision of the Commissioner must therefore be reversed and the case remanded for further analysis.

On February 26, 2009, Dr. Herman Jones, Ph.D., claimant's treating neuropsychologist at the University of Oklahoma Medical Center's Neurology Clinic, wrote in a "To whom it may concern" letter that the roots of claimant's vertigo and cognitive decline were undetermined, but that recent test results indicated that "there is some cognitive decline from projected levels . . . and a global suppression of his concentration, which subsequently impacts his ability to learn and recollect." Dr. Jones continued by stating that he was still attempting to determine the etiology of his ailments but that it was likely that the claimant's use of pain narcotics was to blame (Tr. 669). He concluded the letter by stating that it was "unlikely that [claimant] could find and maintain competitive employment of a full time basis" and reiterated that "[t]he etiology of [claimant's] symptoms remains unclear . . . as well as the duration." (Tr. 669).

The claimant's medical records were also reviewed by state non-examining reviewing physician Dr. Janice B. Smith, Ph.D., who determined that claimant had

somatoform and personality disorders (Tr. 344). Dr. Smith performed a Psychiatric Review Technique (PRT), in which she determined that claimant had moderate limitations in his activities of daily living and social functioning, mild limitations in the ability to maintain concentration, persistence, and pace, and no episodes of decompensation (Tr. 354). Further, in almost exact verbiage used by the ALJ in his opinion, Dr. Smith wrote that claimant was capable of understanding and carrying out "simple and more complex instructions under routine supervision" and that he "can relate superficially to others for work matters, but may have difficulty relating to the general public" (Tr. 360).

Medical opinions from the claimant's treating physician are entitled to controlling weight if "'well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record.'" *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). When the treating physician's opinions are not entitled to controlling weight, the ALJ must determine what weight to give them by analyzing *all of the factors* set forth in 20 C.F.R. §§ 404.1527, 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ 404.1527, 416.927].'"), *quoting Watkins,* 350 F.3d at 1300. The factors are: (i) length of the treatment relationship and the frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the opinion is supported by

relevant evidence; (iv) the consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors tending to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decides to reject the treating physician's opinions entirely, he must "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300.

The ALJ rejected Dr. Jones's opinion about the limiting effects of the claimant's vertigo and cognitive decline for the following reasons: (i) his opinions were based on subjective complaints as opposed to objective testing; (ii) he stated that claimant's mental problems were related to chronic narcotic usage and failed to consider how claimant's mental problems would improve if he were *not* using narcotics; (iii) he stated that the claimant was unable to maintain employment, *i. e.*, that the claimant was disabled, which is an issue reserved to the Commissioner; and (iv) he failed to indicate what evidence he relied upon in making his determinations regarding the claimant's mental problems, *i. e.*, the ALJ found that Dr. Jones' opinion was not well supported by the medical evidence as a whole (Tr. 19). However, the ALJ's analysis of Dr. Jones's opinions was legally deficient for several reasons.

First, the ALJ's determination that Dr. Jones's opinion was not well supported by the medical evidence might have justified his refusal to give it controlling weight *if* the ALJ had specified the inconsistencies to which he was referring. *See Langley,* 373 F.3d

at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are."). Second, the ALJ should have re-contacted Dr. Jones if he had any questions regarding the effect that refraining from the use of pain narcotics would have on the claimant's mental health-related limitations and the clinical tests (if any) that he relied upon in forming his opinion. *See Maes v. Astrue*, 522 F.3d 1093, 1097-98 (10th Cir. 2008) ("[T]he ALJ generally must recontact the claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled. . . . [W]hen the ALJ considers an issue that is apparent from the record, he has a duty of inquiry and factual development with respect to that issue."), *citing* 20 C.F.R. § 404.1512(e) and *Grogan v. Barnhart*, 399 F.3d 1257, 1263-64 (10th Cir. 2005). *See also Ragan v. Barnhart*, 89 Fed.Appx. 160, 163 (10th Cir. 2004) ("While lack of support is a legitimate reason to deny controlling weight to a physician's opinion, the ALJ's finding of lack of supporting clinical findings triggered a duty to seek further development of the record before rejecting the opinion.") [unpublished opinion], *citing Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Finally, even if Dr. Lang's opinions were not entitled to controlling weight, the ALJ should have determined the proper weight to give them by applying *all of the factors* in

20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927. *Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ 404.1527, 416.927].'"), *quoting Watkins,* 350 F.3d at 1300.

Further, the ALJ appears to have relied on the opinion of state agency physician Dr. Smith, Ph.D. in formulating the claimant's RFC. The ALJ did not, however, even *mention* Dr. Smith, let alone explain why he adopted her opinion over that of Dr. Jones, who actually treated the claimant. *See* Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *4 ("[T]he [ALJ] . . . must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists. . . . RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)."). *See also Warren v. Barnhart*, 2006 WL 4050700, at *7 (D. Kan. July 10, 2006) (remanding ALJ's decision because it "contain[ed] no analysis of the expert's medical opinion, evaluation of the opinion pursuant to the regulatory factors, or explanation of how the expert's opinion outweigh[ed] that of the treating physician.") [unpublished opinion].

Because the ALJ failed to properly evaluate the opinions of the claimant's treating physician (as well as the state reviewing physician's opinion) as to functional limitations, the Commissioner's decision must be reversed and the case remanded for further analysis by the ALJ. On remand, the ALJ should evaluate *all* medical opinions in accordance

with the standards set forth above, and if this results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED further proceedings consistent herewith.

**DATED** this 31st day of March, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma